TRUJILLO & TRUJILLO, APLC
Robert Trujillo, Esq. (CA SBN 148975)
Melody Trujillo, Esq. (CA SBN 165218)
41593 Winchester Road, Suite 201
Temecula, CA 92590
Tel: 951-296-9529
Email: trulaw@trujillo-law.us

Suzanne Skolnick, Esq. (CA SBN 211076)
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA 92010
Tel.    (760) 405-4397
Email: suzanne@skolnicklawgroup.com

Lewis Khashan, Esq. (CA SBN 275906)
38975 Sky Canyon Drive Suite 201
Murrieta, CA 92563
Tel. (951) 775-7279
Email: lewis@khashanlaw.com
Attorneys for Plaintiff DAVID MANZO,
By and through his conservator, Genoveva
Manzo.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MANZO, by and through his Conservator, Genoveva Manzo,<br><br>Plaintiff,<br>v.<br>COUNTY OF RIVERSIDE; STANLEY SNIFF, Sheriff of Riverside County; ANDREW SHOUSE, Captain of Robert Presley Detention Center; JERRY GUTIERREZ, Corrections Assistant Sheriff; Deputy MCCOLLUM; Deputy P. SALAZAR; | Case No.  5:17-cv-1165<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**<br><br>**JURY TRIAL DEMANDED** |

1

Deputy JONATHAN TOAN; Sergeant )
CHRISTOPHER WEDEL; Nurse )
ENEKA; KEVIN SANCHEZ; ROSS )
LUNSTED; and DOES 1-125, )
          Defendants. )
           )

_____ )

COMES NOW PLAINTIFF DAVID MANZO, By and Through his

Conservator, Genoveva Manzo, though his attorneys of record and alleges and

complains as follows:

## PRELIMINARY STATEMENT

This matter arises from 35-year-old Plaintiff David Manzo being rendered a

quadriplegic at the hands of County of Riverside Sheriff's department employees

when they failed to utilize universally accepted spinal or medical precaution

measures to protect Plaintiff's spine from paralysis following injuries Plaintiff

sustained in a fight with another inmate at Robert Presley Detention Center in

Riverside, California.  The County of Riverside, and its employees, have engaged

in a pattern and practice of violating Plaintiff's civil rights from the time of his

initial arrest, wherein deputies used excessive force against Plaintiff, including

slamming Plaintiff to the ground, beating him, and pinning him to the ground with

the deputies' knee and full weight on the back of plaintiff's neck; to their failure

to protect plaintiff from violence at the hands of a known, vicious inmate; to the

final moment when County of Riverside jail employees manhandled Plaintiff's

injured body causing catastrophic spinal cord injuries and rendering plaintiff a 35-year-old quadriplegic.  A grave injustice has occurred as a result of the County of Riverside and its various employees' deliberate indifference to Plaintiff's rights.

## JURISDICTION

1.     This action arises under Title 42 of the United States Code, Section 1983.  Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Section 1331 and 1343.  In addition, this Court has pendent and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims alleged in this complaint.

## VENUE

2.     The unlawful acts and practices alleged herein occurred in the County of Riverside, State of California, within this judicial district.  Therefore, venue lies in the United States District Court for the Central District of California.

## CLAIMS REQUIREMENT

3.     Plaintiffs have complied with the requirements of California Government Code section 900, et seq., where an action for state court claims is filed against a public entity and its employees for the incident occurring on October 25, 2016.

## CONSERVATORSHIP ESTABLISHED

4.     On February 17, 2017, Letters of Conservatorship were issued by the

3

Superior Court of California for the County of Riverside, naming Genoveva

Manzo as conservator over Plaintiff David Manzo.

## PARTIES

5.     Plaintiff, David Manzo, an individual, by and through his

conservator, Genoveva Manzo (hereafter "Manzo"), is, and at all times mentioned

herein was, a resident of the State of California.

6.     Defendant County of Riverside (hereinafter "County") is a public

entity which is responsible for and administers the Robert Presley Detention

Center (hereinafter "RPDC") through its agency, the Riverside County Sheriff's

Department (hereinafter "RCSD").  County promulgates policies and practices for

the housing, custody, care, safekeeping and protection of inmates in the RPDC.

7.     Defendant Sheriff Stanley Sniff  (hereafter "Sniff") is, and at all

times herein mentioned, was the Sheriff of Riverside County.  Sheriff Sniff ran,

operated, oversaw, administered, supervised and was otherwise responsible for the

conduct of the Riverside County Sheriff's Department at the Robert Presley

Detention Center, including the conduct of emergency medical response teams at

the jail. As Sheriff of Riverside County, Sniff has ultimate supervision and

management responsibility over the five jails, or correctional facilities in

Riverside County, all managed by the Sheriff's Department Corrections Division.

Defendant Stanley Sniff is sued both individually and in his official capacity.

4

8.     Defendant Corrections Assistant Sheriff Jerry Gutierrez (hereafter "Gutierrez") is, and at all times herein mentioned, was the Corrections Assistant Sheriff of Riverside County.  Assistant Sheriff Gutierrez ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the Riverside County Sheriff's Department at the Robert Presley Detention Center.

9.     Defendant Captain Andrew Shouse (hereafter "Shouse") is, and at all times herein mentioned, was the Captain of Robert Presley Detention Center for the Riverside County Sheriff's Department.  Captain Shouse ran, operated, oversaw, administered, supervised and was otherwise responsible for the conduct of the Riverside County Sheriff's Department at the Robert Presley Detention Center.

10.     Defendant Sergeant Christopher Wedel (hereafter "Wedel") is, and at all times herein mentioned, was a Correctional Sergeant for the Riverside County Sheriff's Department and was charged with supervising deputies at RPDC, responsible for the protection, care and custody of the inmates at RPDC and for carrying out the policies and procedures of RPDC and the Riverside County Sheriff's Department.  Sergeant Wedel was present at the time of the incident and oversaw the extraction of David Manzo from the jail.

11.     Defendant Deputy Jonathan Toan (hereafter "Toan") is, and at all times herein mentioned, was a deputy working Dayroom 5A of the RPCD at the

time of the incident and was an employee of the Riverside County Sheriff's Department.  Deputy Toan was responsible for the protection, care and custody of the inmates at RPDC and witnessed the fight between Kevin Sanchez, Ross Lunsted and Plaintiff, David Manzo.

12.     Defendant Nurse Eneka (exact name presently unascertained, hereafter "Eneka") is, and at all times herein mentioned, was a nurse working 5A of the RPCD at the time of the incident and was an employee of the Riverside County Sheriff's Department.  Nurse Eneka was responsible for providing medical care and treatment to inmates at RPDC and witnessed and directly participated in the extraction of Manzo from the jail without providing spinal or medical precautions or following emergency medical protocols and guidelines.

13.     Defendant Deputy McCollum (hereafter "McCollum") is, and at all times stated herein was, a Riverside County Sheriff's Deputy bearing ID No. 4209, and is a resident of California.

14.     Defendant Deputy Salazar (hereafter "Salazar") is, and at all times stated herein was, a Riverside County Sheriff's Deputy bearing ID No. 4599, and is a resident of California.

15.     Defendant Kevin Sanchez (hereafter "Sanchez") is, and at all times herein mentioned, was a resident of the State of California and an inmate at RPDC.

6

16.     Defendant Ross Lunsted (hereafter "Lunsted") is, and at all times herein mentioned, was a resident of the State of California and an inmate at RPDC.

17.     At all times relevant to this Complaint, Does 1- 50 are and were Sheriff's deputies and/or employees or agents of the County of Riverside.

18.     At all times relevant to this Complaint, Does 51-100 are individuals whose identities are presently unascertained.

19.     Plaintiff is truly ignorant of the names and capacities of Defendant Does 1 – 100, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is truly ignorant of the facts giving rise to Does 1-100, inclusive's liability, and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability.

20.     Plaintiffs are informed and believe, and based thereon allege, that each Doe defendant so named is responsible in some manner for the injuries and damages suffered by Plaintiff.

21.These defendants were agents, servants, and employees of each of the named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants and each of the defendants had approved or ratified the actions

7

of the other defendants by making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

## STATEMENT OF FACTS

22.     On September 5, 2016, Plaintiff, David Manzo was a 34 year old Perris, California resident suffering from a mental health disorder, including, schizophrenia.  Manzo had been diagnosed a schizophrenic since the age of 16. On September 5, 2016, Defendants Riverside County Sheriff's Deputies Salazar and McCollum responded to a domestic disturbance call at Manzo's home in Perris, California.

23.     Prior to September 5, 2016, Defendant Salazar, in his capacity as a Sheriff's deputy, had interacted with Manzo on numerous other occasions due to Manzo's mental health condition wherein Defendant Salazar would take Manzo to Mental Health Emergency Treatment Services ("ETS") and place Manzo on a Welfare and Institutions Code section 5150 detention.  Several times prior to the incident, when Defendant Salazar would arrive at Manzo's home for purposes of taking him to ETS, Manzo would be waiting for Defendant Salazar on the front lawn while smoking a cigarette.  Defendant Salazar would allow Manzo to finish smoking his cigarette before peacefully taking him into custody and transporting him to ETS for a 5150 hold.

24.     On September 5, 2016, however, Defendant Salazar arrived to find

8

Manzo on the lawn of his home smoking a cigarette, Defendant Salazar refused to let Manzo finish his cigarette and instead demanded that he go immediately with Defendant Salazar to jail, rather than ETS. Manzo flicked his cigarette, unintentionally hitting Defendant Salazar in the face with the cigarette. At that point, Defendant Salazar aggressively tackled Manzo, knocking him to the ground, forcefully putting his knee into the back of Manzo's neck and holding it there while Manzo was face down on the ground. Once on the ground, Manzo did not attempt to resist the arrest and instead, remained on the ground while Defendant Salazar cuffed Manzo. After Defendant Salazar cuffed Manzo and Manzo exhibited no signs of resistance to the arrest, Defendant Salazar and Defendant McCollum then began to viciously beat Manzo with their fists, with each deputy punching Manzo in the head no less than three times, when Manzo's head was against the ground. Manzo was thereafter transported to the Riverside County Sheriff's Perris Station. He was booked and ultimately transferred to Robert Presley Detention Center (RPDC) in Riverside, California.

25.     At all times, Defendants Salazar and McCollum knew that Manzo suffered from a mental health disorder – namely, schizophrenia. Both deputies knew that as a result of Manzo's mental health condition, he required special accommodations and that a serious risk to Manzo's health and safety existed by allowing Manzo to interact with other inmates, in particular, inmates who

PLAINTIFF'S COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS   CASE NO: 5:17-CV-1165

displayed frequent, violent tendencies towards other inmates.

26.    Schizophrenia is a mental health impairment that substantially limits Manzo's major life activities, including his ability to communicate with people, understand people, his ability to learn, and to care for himself in activities of daily living.  Defendants Salazar and McCollum could have and should have offered special accommodations to Manzo including:  communicating with Manzo's caretaker, who was present at the scene; working with his caretaker to approach Manzo in a non-threatening manner, to speak to Manzo in a way that was non-threatening and calming in order to avoid an escalation of the situation and to avoid the use of force; contacting another officer or employee who specializes in communicating with disabled individuals like Manzo to facilitate the necessary interaction, removal or arrest; by respecting Manzo's comfort zone, engaging in non-threatening communications and gestures with Manzo directly, using the passage of time to defuse the situation, and ceasing the use of force once it was evident that Manzo was unarmed, terrified, no threat to officers and following their instructions.

27.    After Manzo's arrest on September 5, 2016 and at the time of the incident on  October 25, 2016, Manzo was temporarily being housed at RPDC pending transfer to Patton – a psychiatric hospital.  Due to his mental illness, Manzo had been deemed mentally incompetent to stand trial by 2 different doctors

and the court and therefore, was awaiting transfer to Patton when the October 25, 2016 incident occurred.

28.     At RPDC on October 25, 2016, Manzo was the victim of an assault and battery by inmates Defendant Kevin Sanchez and Defendant Ross Lunsted. On that date, while Manzo, Sanchez and Lunsted were in the 5A Dayroom of the RPDC, Sanchez began to threaten, intimidate and physically fight with Manzo. The fight occurred directly in front of the window to the Pod Control room. The Pod Control room overlooks the dayroom with a large window through which jail staff can observe and supervise the inmates in the dayroom. The Pod Control room is manned at all times by at least one deputy. Plaintiff is informed and believes and based thereon alleges, that at the time of the fight between Sanchez and Manzo, there was at least one, and possibly more than one deputy, in the Pod Control room watching Sanchez threaten, intimidate and physically punch Manzo.

29.     The fight between Sanchez, Manzo and Lunsted was recorded on video that was captured from cameras set up in the jail. The fight continued for several minutes before being stopped. At the time of the incident, Sanchez can be seen chasing Manzo from one side of the dayroom to the other and back to the other side of the dayroom again. At one point, Manzo attempts to flee from Sanchez by trying to climb up the stairs to the second level of the dayroom, but he is then punched by Lunsted and pushed back into Sanchez such that Manzo is

unable to escape from the attack by Sanchez.  Manzo tried to get away from Sanchez who continued to follow after him relentlessly, continuing the fight, which included multiple hits to Manzo.  Plaintiff is informed and believes and based thereon alleges, that throughout the entire attack of Manzo by Sanchez, jail staff that were on duty for Dayroom 5A, including the staff manning the Pod Control booth, watched the fight occur.  Sanchez then grabbed Manzo from behind, whereupon Sanchez then fell backward to the ground, pulling Manzo to the ground with him, with Manzo landing on top of Sanchez's body.

30.     After Sanchez pulled Manzo to the ground, jail staff then flashed the lights and inmates in the 5A dayroom returned to their cells with the exception of Manzo who remained laying on the floor of Dayroom 5A.  Video of the incident shows Manzo still had use of his limbs while he was awaiting medical attention on the floor of the dayroom.  At that moment, Manzo was still able to roll his body onto its side briefly through his own efforts using his limbs.

31.     Plaintiff is informed and believes and based thereon alleges, that prior to October 25, 2016 County of Riverside jail staff knew that Defendant Sanchez was a violent person who repeatedly picked fights with other inmates in the jail and that County of Riverside jail staff knew, or should have known based on Sanchez's prior conduct toward other inmates that Sanchez would likely threaten, intimidate and harm Manzo.  RPDC staff knew that Sanchez should not

12

be permitted to have contact with Manzo prior to the time Sanchez attacked

Manzo.  Employees of the Riverside County Sheriff's office and Robert Presley

Detention Center failed to properly classify and segregate Sanchez from Manzo.

32.     On October 25, 2016, Defendant Toan and other currently

unascertained deputies were on duty and tasked with the responsibility of ensuring

the safety of inmates in 5A of RPDC.  Manzo was laying injured on the floor of

Dayroom 1 of 5A awaiting medical attention when Deputies and medical staff of

the Riverside County Sheriff's Department entered the dayroom and abruptly and

roughly picked up Manzo by his shirt with his head hanging freely, and rolled him

on his back, with his feet tucked underneath him in an awkward position.

Deputies and medical staff of the Riverside County Sheriff's Department made no

attempt to follow basic emergency medical services, protocols and guidelines in

providing medical treatment to Manzo.  No cervical collar was placed on Manzo,

nor was a backboard utilized to prevent damage to Manzo's spine.  It is clear from

the video that Manzo still had use of his limbs immediately before deputies

entered the dayroom.  Deputies manhandled Manzo several times trying to get

him to sit up or stand.  While enduring this treatment, Manzo's limbs immediately

went limp upon being picked up by his shirt by the deputies. Manzo was also

conscious while laying on the floor of the dayroom and could have answered

questions concerning his medical condition to staff if they had asked him.

PLAINTIFF'S COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS   CASE NO: 5:17-cv-1165

Instead, deputies entered the dayroom and roughly, and improperly, picked Manzo up.  Plaintiff is informed and believes and based thereon alleges, that in manhandling Manzo's body in that manner, the deputies caused catastrophic injury to Manzo's spine rendering him a quadriplegic.  Video of the incident shows deputies trying numerous times to pick up Manzo only for Manzo to slump back awkwardly to the floor, clearly lacking any ability to move his four limbs after having been picked up by the deputies.

33.     Deputy Jonathan Toan, Nurse "Eneka", Sergeant Christopher Wedel and other Riverside County sheriff's deputies, nursing staff, and first responders on the scene (whose identities are currently unascertained) all stood around watching Manzo's body be manhandled by the deputies.  All of the jail staff on the scene ignored Manzo's serious medical needs.  All of the jail staff on the scene failed to follow jail procedures in dealing with a medical emergency.  None of the staff called for a backboard or cervical collar.  Nor did any of the jail employees assess Manzo's medical condition *first* before trying to move his body.  Instead, after trying to have Manzo stand or sit on his own without success, jail staff then propped Manzo up in a wheelchair and wheeled him out of the dayroom and ultimately, out of the jail.

34.     Throughout the entire time that Manzo's body was being manhandled by the deputies, Defendant Wedel, a supervising sergeant, stood by with his hands

14

in his pocket observing his subordinates failing to respond to Manzo's medical

needs and taking no action himself to discipline, intervene or otherwise stop the

manhandling of Manzo's body.

35.     As a direct and proximate result of the jail staff's failure to use any

spinal or medical precautions when extracting Manzo from the jail, Manzo

suffered catastrophic spinal cord injuries that have rendered him a quadriplegic.

Manzo is no longer able to care for his own needs including, toileting, bathing and

feeding.  Manzo suffers frequent, painful bedsores, bouts of pneumonia and will

require 24-hour round the clock medical care and treatment for the remainder of

his life, which is estimated to be another 45.4 years.

36.     Throughout the entire period of Manzo's detainment by the Riverside

County Sheriff's Department, Manzo displayed behavior consistent with

possessing a serious mental health disorder such that he should have been

evaluated, classified, and provided necessary mental health treatment appropriate

for his condition, including, specialized housing to protect him from being

threatened and attacked by other inmates.

37.     On information and belief, plaintiff further alleges that employees of

the Riverside County Sheriff's Department and Robert Presley Detention Center

failed to make timely inspections of the dayroom such that the beating of Manzo

could have been prevented, or deputies could have intervened such that Manzo

would not have sustained the injuries he sustained in the incident with Sanchez. Additionally, plaintiff alleges on information and belief that deputies assigned to monitor the dayroom were either not present or were not paying attention and failed to properly monitor the dayroom, including, failing to make visual inspections of the dayroom according to the jail's standard operating procedures.

38.     On information and belief, Plaintiff further alleges that employees of the Riverside County Sheriff's Department and Robert Presley Detention Center failed to administer prompt and adequate medical attention to Manzo which directly caused Manzo to become quadriplegic and suffer severe, permanent, harm.

## DAMAGES

39.     As a proximate result of Defendants' conduct, Plaintiff David Manzo suffered permanent paralysis of his four limbs resulting in pain and suffering, past and future medical expenses, past and future wage loss, and past and future lost earning capacity.

40.     Plaintiff has found it necessary to engage the services of counsel to vindicate his rights under the law.  Plaintiff is therefore entitled to an award of all attorneys' fees and litigation costs incurred in pursuing this action for violation of civil rights.

///

**First Claim**

**Violation of 42 U.S.C. §1983**

**Deliberate Indifference to Serious Medical Needs**

**By David Manzo against County of Riverside, Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unscertained employees of the County of Riverside (Does 1 to 100)**

41.     Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-40 of this complaint.

42.     On October 25, 2016, Manzo had a serious medical need in that he had been injured in a fight with a known, violent inmate and was laying on the floor of Dayroom 1, 5A requiring medical attention.

43.     Manzo, as a pretrial detainee had a constitutional right under the 14th Amendment to receive medical care.

44.  County of Riverside, Riverside County Sheriff's Department, Robert Presley Detention Center, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside (Does 1 to 100) violated Manzo's constitutional right to medical care when they acted with deliberate indifference to Manzo's serious medical needs by

improperly manhandling Manzo's body from the floor without using any universally accepted spinal or medical precautions.

45.    At all times, County of Riverside, Riverside County Sheriff's Department, Robert Presley Detention Center, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside (Does 1 to 100) were acting under color of law and were acting in the course and scope of their employment with County of Riverside.

46.    At all times, County of Riverside, Riverside County Sheriff's Department, Robert Presley Detention Center, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside (Does 1 to 100)  knew that Manzo had a serious medical need.

47.    At all times, they failed to provide appropriate assessment and evaluation of Manzo's injuries; failed follow basic, universally accepted emergency medical protocols; failed to follow Riverside County Sheriff standard emergency medical procedures and policies; failed to provide adequate observation and medical intervention for Manzo's serious medical needs; seriously aggravated Manzo's medical condition by authorizing the moving,

dragging, and careless manipulation of Manzo's body after he suffered serious injuries; delayed in providing appropriate care and treatment of Manzo's injuries and failed to ensure appropriate medical treatment for Manzo.

48.    At all times, Defendants County of Riverside, Riverside County Sheriff's Department, Robert Presley Detention Center, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside (Does 1 to 100)  knew or should have known that by failing to stabilize Manzo's spine prior to moving his body out of the jail, Manzo could and would suffer severe spinal cord injuries, including, paralysis.  When Defendants extracted Manzo from the jail floor, they moved his body without spinal or medical precautions, attempting to lift him up at least five (5) times without success and eventually, transported him out of the jail only in a wheelchair.

49.    Throughout the entire time deputies were manhandling Manzo's body, Defendant Wedel, a supervising sergeant, stood by with his hands in his pocket doing nothing to discipline, instruct, intervene or stop the conduct of his subordinates from causing further, catastrophic, permanent injury to Manzo, despite knowing that Manzo had a serious and immediate medical need.

50.    As a direct and proximate result of the foregoing acts and omissions that

were deliberately indifferent to Manzo's serious medical needs, Manzo suffered severe harm in that he was rendered a quadriplegic during his extraction from the jail.

51.     As a further direct and proximate result of the foregoing conduct, Manzo suffered physical pain, severe emotional distress, and mental anguish.  Manzo is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

52.  The conduct alleged herein was done in deliberate or reckless disregard of Manzo's constitutionally protected rights, justifying an award of exemplary damages against the individual Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.  Manzo is also entitled to attorney fees and costs of suit herein.

**Second Claim**

**Violation of 42 U.S.C. §1983**

**Failure to Protect & Cruel and Unusual Punishment – 14th Amendment**

**By David Manzo against Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan and other presently unascertained employees of the County**

20

**of Riverside (Does 1 to 100)**

53.   Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-52 of this complaint.

54.   Manzo was incarcerated at RPDC under conditions that posed a substantial risk of serious harm to his health and safety, which were known to Defendants Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan and other presently unascertained employees of the County of Riverside Does 1 to 100. Such conditions included:

(a)  Placing Manzo, who suffered from mental health conditions, including schizophrenia, in a dayroom where Defendant Sanchez could interact with him.  Defendant Sanchez was a known, violent inmate who had inflicted violence upon other inmates multiple times prior to the date that he attacked Manzo;

(b)  failing to assign sufficient Sheriff's deputies to the RPDC in order to provide adequate monitoring and supervision of the inmates;

(c)  causing and permitting the RPDC to be overcrowded, which contributed to causing inmate on inmate violence;

(d)  failing to properly train the Sheriff's deputies assigned to the RPDC so that the deputies did not have sufficient knowledge or skills to adequately monitor

21

and supervise the inmates;

(e)  failing to follow standard operating procedures regarding performing physical visual inspections of the dayrooms at RPDC;

(f)  placing Manzo in the dayroom with other inmates under circumstances which were conducive to the eruption of violence; and

(g)  failing to timely intervene to stop the attack by Defendants Sanchez and Lunsted against Manzo.

55.   Defendants Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan and other presently unascertained employees of the County of Riverside Does 1 to 100, had ample and reasonably sufficient time and opportunity to intervene and prevent Manzo's injuries, and were compelled to do so as Sheriff's deputies under the laws of the State of California and under the Constitution of the United States of America.

56.   In deliberate indifference to the life and welfare of Manzo, each said Defendant intentionally and with deliberate indifference to the civil rights of Manzo, refrained from intervening in the acts leading to Manzo's injuries.

57.   In doing the acts complained of, Defendants Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan and other presently unascertained employees of the

PLAINTIFF'S COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS    CASE No: 5:17-CV-1165

County of Riverside Does 1 to 100, acted under the color of state law to deprive Manzo of certain constitutionally protected rights including, but not limited to, the right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

58.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive and unrelated to any activity which governmental officers may appropriately and legally undertake in the course of protecting persons or property or ensuring civil order.

59.     In acting or failing to act as hereinabove alleged, the aforementioned Defendants, were deliberately indifferent to the substantial risk that Sanchez would assault and severely injure Manzo.

60.     As a proximate result of the aforementioned wrongful conduct, Manzo suffered injuries and damages as set forth herein, including, being rendered a quadriplegic.

61.     The conduct of Defendants Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan and other presently unascertained employees of the County of Riverside Does 1 to 100, was intentional, malicious, willful, wanton and in reckless

23

disregard of Manzo's constitutional rights and/or grossly negligent in that this conduct shocks the conscience and is fundamentally offensive to a civilized society, so as to justify the imposition of punitive damages against each of the foregoing individual respondents.

**Third Claim**

**Violation of 42 U.S.C. §1983**

**Failure to Properly Train**

**By David Manzo against County of Riverside, Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside (Does 1 to 100)**

62.    Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-61 of this complaint.

63.    Officials of the Riverside County Sheriff's Department, acting under color of law, have subjected Manzo and other persons similarly situated to a pattern of conduct consisting of continuing, widespread and unconstitutional misconduct in violation of Manzo's 14th amendment due process rights. Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100,

while acting under color of law, have failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates; to prevent the consistent and systematic failure to provide medical care; and to train their deputies properly on basic medical procedures, emergency procedures, welfare or cell checks. There has been an official policy of acquiescence in the wrongful conduct.  Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, have failed to promulgate corrective policies and regulations in the face of repeated constitutional violations.

64.     Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, have also failed to supervise and insure that deputies fulfill their full 12 hours of medical training, instead allowing condensed versions of the classes, and allowed deputies and trainers to sign under penalty of perjury that they completed their full 12 hour classes and passed their exams when Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, knew, or should

25

have known, that deputies had not complied with their medical training requirements.

65.     Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, have acted with deliberate indifference in disregarding their duty to protect the public from official misconduct.  The failure to promulgate or maintain constitutionally adequate training as required by POST ("Peace Officer Standards and Training") certification was done with deliberate indifference to the rights of Manzo and others in his position.  Despite their knowledge of previous instances of inadequate and improper medical responses to serious medical needs of inmates housed in the Riverside County jail system, County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, failed to properly train or retrain their deputies and medical staff to prevent serious harm to inmates and acquiesced in, and ratified, insufficient medical training of the deputies, knowing that such inadequate training put the health and safety of inmates at RPDC in jeopardy.  The foregoing defendants knew or it should have been obvious that inadequate training would result in the deprivation of Manzo's 14th amendment right to due  process.

66.     The foregoing lack of adequate training was done with deliberate indifference and caused Manzo harm at the hands of Defendants Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside when they man-handled Manzo's body without using universally accepted emergency medical protocols and spinal precautions, thereby rendering Manzo a quadriplegic.

67.     As a result of the foregoing defendants' failure to train, the foregoing defendants were deliberately indifferent to Manzo's medical needs.

68.     As a direct and proximate result of the actions of Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, Manzo suffered unconstitutional treatment and inhumane conditions while in RPDC as well as significant physical and psychological injuries.  Manzo is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

**Fourth Claim**

**Violation of 42 U.S.C. §1983**

**Failure to Supervise**

27

**By David Manzo against County of Riverside, Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100**

69.     Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-68 of this complaint.

70.     Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100:

(a) failed to provide adequate supervision to the medical staff and deputies who are required to render emergency medical care that meets the standards of the Constitution;

(b) failed to comply with California law that requires a specific ratio of supervising sworn deputies to correctional deputies at RPDC; and

(c)  failed to promulgate and enforce adequate policies and procedures related to rendering adequate emergency medical care that meets professional and legal standards such that the violation of citizens' civil rights by deputies and medical staff occurred and is continuing to occur in the Riverside County jail system.

PLAINTIFF'S COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS   CASE NO: 5:17-CV-1165

71.    Defendant County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, have a widespread history of ratifying deputy misconduct by failing to conduct appropriate investigations and by encouraging and perpetuating a shroud of secrecy among jail employees regarding conditions in the jail by threatening criminal prosecution against employees who discuss jail conditions with outsiders.

72.    The foregoing Defendants were aware of previous instances of untimely, inadequate and improper medical care and treatment provided to inmates and failed to properly supervise and discipline their employees or agents to abate such conduct.  Upon information and belief, supervising officers were made aware of the foregoing misconduct or witnessed the Constitutional violations committed by deputies and medical staff but failed to supervise or discipline them.

73.    There has been an official policy of acquiescence in the wrongful conduct.  Defendant County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, have failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.

74.     The foregoing Defendants failed to supervise and insure that deputies fulfilled their full 12 hours of medical training, instead allowing deputies and trainers to sign declarations that the training was complete when in fact, it was not.  The foregoing Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

75.   As a result of their failure to properly supervise deputies and medical staff of the Riverside County Sheriff's office, Respondent County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100 were deliberately indifferent to the needs of Manzo.  The failure to supervise was the moving force behind the misconduct of the deputies, the denial of medical care to Manzo and Manzo's resulting pain, suffering and mental anguish.

76.     As a result of the foregoing conduct, Manzo's Fourteenth Amendment due process rights were violated.

77.     As a direct and proximate result of the actions of Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, and other presently unascertained supervisory employees of the County of Riverside Does 1 to 100, David Manzo

suffered unconstitutional treatment and inhumane conditions while in RPDC as well as significant physical and psychological injuries.

78.     Manzo is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

## Fifth Claim

## Violation of 42 U.S.C. §1983

## Monell Municipal Liability

## By David Manzo against County of Riverside

79.     Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-78 of this complaint.

**Monell Liability – Pattern/Practice of Denying Medical Care:**

80.     Defendant County of Riverside maintained an unconstitutional policy, ordinance or regulation which allowed their deputies and medical staff to deny medical care to inmates.  There were longstanding and systemic deficiencies in the Riverside County jail system, including RPDC's treatment of inmates. Deficiencies included improper cell checks, inadequate medical staffing, lack of required training or screening, diagnosis and treatment of medical and psychiatric conditions, and non-compliant medical policies and procedures. County of Riverside's failure to train its deputies regarding treatment of inmates in

31

emergency medical situations and/or medical distress rises to the level of a municipal custom that authorized and/or condoned deputy and medical staff misconduct.

81.    Upon information and belief, the permanent, widespread, well-settled practice or custom was to deny treatment to inmates in serious medical distress; not properly screen inmates for medical care or treatment; failing to utilize universally accepted emergency medical protocols and procedures; failing to communicate the medical needs of inmates to other staff, including outside medical facilities; not properly checking on the welfare of the inmate; failing to conduct proper cell checks as required; and not investigating misconduct of deputies and medical staff.

82.    County of Riverside's failure to render adequate medical care to inmates housed in the County jails, including RPDC was previously addressed in a class action lawsuit brought on behalf of County of Riverside jail inmates entitled *Quinton Gray v. County of Riverside*, Case No.:  EDCV 13-0444 VAP, and filed on March 8, 2013 in the United States District Court for the Central District of California.   In that case, County of Riverside entered a consent decree which was filed on June 7, 2016 wherein the County of Riverside agreed to implement remedial measures to address the failure to provide constitutionally adequate medical care to prisoners housed in County of Riverside jails.  The remedial plan

included, among other requirements: that "all health care staff shall provide community standard of care" in their respective roles; that emergency procedures are to be provided "immediately"; and that in the event of a medical emergency, the inmate will be seen by health care staff at an RN level or higher "as soon as possible".

83.     Notwithstanding the consent decree, on October 25, 2016, Manzo experienced a medical emergency and County of Riverside jail staff continued to follow their longstanding policy, custom and practice of refusing to provide adequate medical care to Manzo by failing to provide any universally accepted medical and spine emergency procedures including, but not limited to, an evaluation of Manzo's condition prior to undertaking movement of Manzo's body, and use of spinal precautions like a cervical collar and backboard when transporting Manzo out of the jail.

84.     Defendant County of Riverside was deliberately indifferent to the widespread unconstitutional acts by its deputies and medical staff and failed to set forth appropriate policies regarding the treatment of inmates, even after entering a consent decree in the *Quinton Gray v. County of Riverside* case.  During the relevant period, all individually named Defendants herein, medical staff and presently unascertained employees of the County of Riverside Does 1 to 100, were acting pursuant to the policy of Defendant County of Riverside.  This pattern

of deliberate indifference to basic medical needs of inmates within the County of Riverside jail system promoted and maintained a culture of deliberate indifference to human life and basic medical care and treatment for inmates at RPDC.

85.     Defendant County of Riverside was deliberately indifferent to the right of David Manzo and others to be free from, and protected from, harm caused by the misconduct of its employees.  The County of Riverside's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to inmates and violated inmates', including David Manzo's Fourteenth Amendment right to receive medical care and due process.

86.     As a direct and proximate result of the practice or custom of Defendant County of Riverside and the individual Defendants named herein, as well as presently unascertained employees of the County of Riverside, Does 1 to 100, Manzo was denied appropriate medical care when his body was moved without the use of spinal or medical precautions of any kind, thereby rendering him a quadriplegic.

87.     The unlawful and illegal conduct of Defendant County of Riverside and the individually named defendants alleged herein, Manzo's rights, privileges and immunities secured to him by the Constitution of the United States, including, but not limited to, due process under the 14th Amendment to the Constitution was violated.

88.      Manzo is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

89.      As a direct, proximate and foreseeable result, Manzo suffered damages in an amount according to proof at the time of trial.

**Monell Liability – Pattern/Practice of Use of Excessive Force:**

90.      Defendant County of Riverside Sheriff's deputies, acting under color of law, have subjected Manzo and other persons similarly situated to a pattern of conduct consisting of a continuing, widespread and persistent pattern of unconstitutional misconduct, including beating of detainees.

91.      County of Riverside failed to properly investigate complaints of excessive force; and has a widespread history of ratifying use of excessive force by failing to conduct appropriate investigations into deputy misconduct.

92.      County of Riverside knew or should have known that deputies were violating individuals' constitutional rights by using excessive force and specifically that Defendants Salazar and McCollum were violating the rights of arrestees.  County of Riverside knew or should have known that Defendants Salazar and McCollum frequently used excessive force in arresting individuals, including beating arrestees after the arrestee had already been handcuffed and

posed no threat to officer safety; that the deputies frequently ignored evidence that potential arrestees suffered from mental health disorders that required the use of Welfare and Institutions Code 5150 procedures rather than arrest; and that the deputies would arrest individuals under factual circumstances that should have led to the arrestee's evaluation by ETS rather than booking and jail.

93.     Faced with such information, County of Riverside refused to investigate the matter and/or took no remedial steps or action against Deputy Salazar and Deputy McCollum.  There has been an official policy of acquiescence in the wrongful conduct.  County of Riverside also failed to promulgate corrective policies and regulations in the face of such repeated constitutional violations.

94.     County of Riverside as a matter of custom, practice and policy, failed to maintain adequate and proper training necessary to educate deputies in the Riverside County Sheriff's Department as to the Constitutional rights of arrestees; to prevent the consistent and systematic use of excessive force by arresting deputies; and to prevent the beating and extra judicial punishment of arrestees by officers.  County of Riverside failed to provide adequate training and supervision to deputies that hold the power, authority, insignia, equipment and arms entrusted to them.

95.     Manzo is informed and believes, and based thereon alleges, that high ranking County of Riverside officials, including Defendant Sniff, and

presently unknown supervisory officials with the County of Riverside Sheriff's Department Does 1 to 100, knew and/or reasonably should have known about the repeated acts of misconduct by Defendants Salazar and McCollum.

96.      Despite such notice, Plaintiff is informed and believes that County of Riverside approved, ratified, condoned, encouraged, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by Sheriff's Department deputies, including, Defendants Salazar and McCollum.

97.      County of Riverside knew or should have known of the dangerous propensities of County of Riverside Sheriff's deputies, but took no steps to train them, correct their abuse of authority, or discourage their unlawful use of authority.  County of Riverside acquiesced and condoned the abusive behavior by refusing to retrain deputies, or correct their abusive behavior.  That acquiescence had advised sheriff's deputies that using excessive force to arrest a submissive arrestee was acceptable under the policies of the Riverside County Sheriff's Department.

98.      Defendant County of Riverside had knowledge of prior incidents of misconduct and civil rights violations by other deputies involving similar facts. County of Riverside knew or should have been aware that the policy regarding supervision and discipline of deputies who violated civil rights of citizens and who commit assault and battery was so inadequate that it was obvious that a

37

failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by the Riverside County Sheriff's Department deputies.

99.     County of Riverside, with deliberate indifference, disregarded a duty to protect the public from official misconduct.  The failure to promulgate or maintain constitutionally adequate training and the lack of deputy discipline was done with deliberate indifference to the rights of Manzo and others in his position. The constitutionally infirm lack of adequate training and supervision of deputies in this case caused Manzo's damages.

100.     Additionally, as a result of County of Riverside's historical failure to properly investigate complaints of deputy misconduct, County of Riverside was deliberately indifferent to the needs of Manzo.  The County of Riverside's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to arrestees like Manzo.  The County of Riverside's failure to investigate was the moving force behind the wrongful detention and arrest of Manzo and the resulting pain and suffering Manzo experienced, and continues to experience.

101.     Plaintiff is further informed and believes, and based thereon alleges, that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants Salazar and McCollum, the County of Riverside encouraged those deputies to continue their course of misconduct,

resulting in the violation of Manzo's rights as alleged herein.  The aforementioned acts and/or omissions and/or deliberate indifference by high ranking County of Riverside officials, including Sheriff Sniff, resulted in the deprivation of Manzo's constitutional rights, including, but not limited to the following:

(a)  The right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the US Constitution;

(b)  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution;

(c)  The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution; and

(d)  The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the U.S. Constitution; and

(e)  The right to be free from the imposition of cruel and unusual punishment.

102.	As a result of the foregoing conduct, Manzo's constitutional rights were violated.

103.	As a direct and proximate result of the actions of Defendants County of Riverside, Manzo suffered severe harm including significant physical and psychological injuries.  Manzo is now a quadriplegic and is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-

hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

### Sixth Claim

### State Law Negligence

**By David Manzo against County of Riverside, Sheriff Stanley Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside**

104.    Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-103 of this complaint.

105.    Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside Does 1 to 100, owed a duty to Manzo to act with ordinary care and prudence so as not to cause him harm or injury.  The foregoing defendants also owed Manzo a duty to monitor and supervise inmates, including Defendants Kevin Sanchez and Ross Lunsted in order to avoid instances of violence perpetrated by other inmates against Manzo.

106.    At all times mentioned herein, Defendants Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel,

Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside Does 1 to 100 were acting in the course and scope of their employment with Defendant County of Riverside.

107.     Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside Does 1 to 100, and each of them, breached their duty of care to Manzo by:

(a)  failing to engage in universally accepted emergency medical evaluations, checking vitals, triage, and first responder first aid as well as universally accepted spinal or medical precautions before man-handling his body;

(b)  improperly, negligently, wrongfully and recklessly failing to take any action to summon help or transport Manzo in a manner that would not cause him further harm or disability;

(c)  improperly, negligently, wrongfully and recklessly failing to follow proper procedures for inmates showing signs of serious medical need;

(d)  improperly, negligently, wrongfully and recklessly failing to set forth policies regarding medical treatment of inmates, medical screening of inmates, evaluation of inmate injuries, treatment of inmate injuries and transportation of inmates with serious medical needs;

41

(e)  failing to exercise due care in monitoring and supervising Defendants Kevin Sanchez, Ross Lunsted and Manzo;

(f)  failing to exercise due care in separating known, violent inmates like Defendant Kevin Sanchez from vulnerable inmates like Manzo who was suffering from a mental health condition;

(g)  failing to properly supervise jail and medical staff;

(h)  failing to exercise reasonable care in training jail and medical staff; and

(i)  failing to exercise reasonable supervision of jail and medical staff.

108.      By engaging in the foregoing acts and/or omissions, Defendants County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside Does 1 to 100 breached their duty of care owed to Manzo.

109.      The County of Riverside is responsible for the acts and/or omissions of its individual agents and employees under the theory of respondeat superior.

110.      As a direct and proximate result of County of Riverside, Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside Does 1 to 100's negligent

conduct alleged herein, Manzo suffered severe physical harm and emotional distress and is now a quadriplegic.  He is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

111.     The conduct of Defendants Sheriff Sniff, Assistant Sheriff Jerry Gutierrez, Captain Andrew Shouse, Sergeant Christopher Wedel, Deputy Jonathan Toan, Nurse Eneka and other presently unascertained employees of the County of Riverside Does 1 to 100, amounts to oppression, fraud or malice within the meaning of Civil Code section 3294 et seq., and punitive damages should be assessed against each such defendant for the purpose of punishment and for the sake of example.

**Seventh Claim**

**Violation of 42 U.S.C. §1983**

**Excessive Force**

**By David Manzo against Deputy Salazar and Deputy McCollum**

112.     Plaintiff David Manzo realleges and incorporates by reference paragraphs 1-111 of this complaint.

113.     At the time of the arrest of Manzo by Defendants Salazar and McCollum on September 5, 2016, and at all times stated herein, Defendants

43

Salazar and McCollum acted under color of law to deprive Manzo of certain constitutionally protected rights, including, but not limited to:

(a)  The right to be free from excessive force being used against him to effect an arrest under the Fourth, Fourteenth and Fifth Amendments to the U.S. Constitution;

(b)  The right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the US Constitution;

(c)  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution;

(d)  The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the U.S. Constitution; and

(e)  The right to be free from the imposition of cruel and unusual punishment.

114.      Defendants Salazar and McCollum's conduct deprived Manzo of the foregoing constitutional rights when they used unreasonable force to arrest Manzo – specifically, when each deputy punched Manzo in the head no less than three times, when Manzo's head was already against the ground and he no longer posed any threat to the deputies.  Defendants Salazar and McCollum's conduct caused Manzo to suffer extreme pain and suffering and emotional distress, and ultimately, once he was being housed at RPDC, permanent paralysis of all four of his limbs.  Both Defendants Salazar and McCollum were integral participants in

the use of excessive force.

115.     Defendant McCollum also failed to intervene to prevent the violation when Defendant Salazar forcefully held Manzo down with his knee to the back of Manzo's neck.

116.     Defendants Salazar and McCollum knew that failure to provide timely medical treatment for Manzo could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Manzo great bodily harm.

117.     This use of force was excessive and unreasonable under the circumstances because after being handcuffed by the deputies, Manzo did not resist, pose a threat to the safety of the officers, or attempt to evade arrest by flight.  During the relevant period, Defendant Salazar and McCollum were performing their duties as deputies of the Riverside County Sheriff's Department, which is a branch of the County of Riverside.

118.     Based on the conduct of Defendants Salazar and McCollum, Manzo was deprived of his constitutional rights under the Fourth, Fourteenth and Fifth Amendments to the U.S. Constitution.

119.     Defendants Salazar and McCollum knew that the force they used was illegal.  Manzo was subjected to humiliation, fear, physical injury, and pain and suffering by the illegal acts of Defendants Salazar and McCollum.

120.     The conduct of Defendants Salazar and McCollum was willful, wanton, malicious, oppressive, and done with reckless disregard for the rights and safety of Manzo and therefore warrants the imposition of exemplary and punitive damages against Defendants Salazar and McCollum.

### Eighth Claim

### 42 USC § 1983 - False Arrest

### By David Manzo against Deputy Salazar and Deputy McCollum

121.     Plaintiff Manzo realleges and incorporates by reference paragraphs 1-120 of this complaint.

122.     42 USC section 1983 provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress."

123.     Manzo had a firmly established right under the Fourth Amendment to be free from physical abuse, assault, battery, wrongful arrest and detention and intentional and negligent infliction of emotional distress.

124.     On September 5, 2016 at the time of Manzo's arrest and detention,

Defendants Salazar and Deputy McCollum had no probable cause to believe that Manzo had committed a crime and did not have a warrant for his arrest. Defendants Salazar and McCollum knew that Manzo suffered from a mental health condition that rendered him mentally incompetent and furthermore, it was obvious after arriving at the property that the complaining party's statements to dispatch were not true and that the crimes alleged to have been committed by Manzo had not occurred, and that Manzo was not a threat to others. Defendants Salazar and McCollum intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain or confine Manzo.

125. After Manzo was already handcuffed and posed no threat to officers, Defendant Salazar forcefully put his knee to Manzo's neck, pinning him to the ground in a manner designed to cause injury and punish Manzo without due process of law. Additionally, after Manzo was already handcuffed and was no threat to officers, Defendants Salazar and McCollum proceeded to beat Manzo.

126. Based on the foregoing conduct of Defendants Salazar and McCollum, Manzo suffered an unlawful arrest and detention.

127. As a direct and proximate result of Defendants Salazar and McCollum's conduct, the restraint, detention, confinement and arrest caused Manzo to suffer injury, damage, loss or harm according to proof at the time of trial.

**Ninth Claim**

**Violation of Americans With Disabilities Act**

**By David Manzo against County of Riverside**

128.    Plaintiff realleges and incorporates by reference paragraphs 1-127 of this complaint.

129.    Under Title II of the Americans with Disabilities Act, 42 USC § 1231, et seq., and Section 504 of the Rehabilitation Act, 29 USC § 701, et seq., Manzo is a qualified individual with a disability as defined by 42 USC § 12102(1) and 29 USC § 705 because he suffers from schizophrenia, which is a mental health impairment that substantially limits Manzo's major life activities, including his ability to communicate with people, understand people, his ability to learn, and to care for himself in activities of daily living.

130.    Defendant County of Riverside authorities and other government agencies acknowledged that Manzo has such a mental health impairment/disability prior to the date of Manzo's arrest on September 5, 2016, and Manzo was regarded by himself and others as possessing that disability.

131.    At all times, Defendants Salazar and McCollum knew of Manzo's disability or should have known of his disability because Defendant Salazar had responded to Manzo's home address for welfare checks on prior occasions in which Defendant Salazar had utilized Welfare and Institutions Code section 5150

to detain Manzo and transport him to ETS for psychiatric evaluation and

treatment.  Additionally, Manzo's disability is obvious to anyone talking to him

because of the way in which he interacts with others and because other witnesses

at the scene informed the deputies that Manzo suffered from mental health

conditions and that Manzo suffered from a disability immediately before the arrest

occurred.

132.    At the time that Defendants Salazar and McCollum approached

Manzo on his front lawn, a reasonable accommodation for Manzo's disability

could have, and should have, been made in order to avoid an escalation of the

situation because Manzo's mental health disability was obvious.

133.    Defendants Salazar and McCollum failed to reasonably accommodate

Manzo's disability in the course of investigating and arresting Manzo, causing

him to suffer greater injury and indignity than other individuals and arrestees.

134.    Potential accommodations might have included, but are not limited

to:  communicating with Manzo's caretaker, who was present at the scene;

working with his caretaker to approach Manzo in a non-threatening manner, to

speak to Manzo in a way that was non-threatening and calming in order to avoid

an escalation of the situation and to avoid the use of force; contacting another

officer or employee who specializes in communicating with disabled individuals

like Manzo to facilitate the necessary interaction, removal or arrest; by respecting

Manzo's comfort zone, engaging in non-threatening communications and gestures with Manzo directly, using the passage of time to defuse the situation, and ceasing the use of force once it was evident that Manzo was unarmed, terrified, no threat to officers and following their instructions.

135.    By declining to provide the foregoing accommodations to Manzo, Defendants Salazar and McCollum denied Manzo the benefits and services of government programs, services, or activities, as well as subjected him to discrimination on account of his disability.  As a public entity that receives federal financial assistance, Defendant County of Riverside is vicariously liable for Defendants Salazar and McCollum's violations of Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act.

136.    As a result of the foregoing conduct, Manzo's rights under Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act were violated and he was discriminated against because of his disability.

137.    As a direct and proximate result of the actions of Defendants County of Riverside, Salazar and McCollum, Manzo suffered severe harm including significant physical and psychological injuries.  Manzo is now a quadriplegic and is no longer able to care for his own needs including, toileting, bathing and feeding and will require 24-hour round the clock medical care and treatment for the remainder of his life, which is estimated to be another 45.4 years.

**Tenth Claim**

**(Claim for Battery Brought by David Manzo Against Defendants Sanchez and Lunsted)**

138.     Plaintiff realleges and incorporates by reference paragraphs 1 - 137 of this complaint.

139.     On October 25, 2016, Defendants Sanchez and Lunsted touched Manzo with the intent to harm or offend him by punching him in Dayroom 1 of 5A of the RPDC.

140.     Defendants Sanchez and Lunsted inflicted bodily injury on Manzo resulting in damages in an amount to be proven at trial.

141.     At no time did Manzo consent to the touching by Defendants Sanchez and Lunsted.

142.     A reasonable person in Manzo's situation would have been offended by Defendants Sanchez and Lunsted's conduct in beating Manzo.

143.     As a direct and proximate result of Defendants Sanchez and Lunsted's actions in beating Manzo, Manzo was harmed and suffered damages and severe injuries as alleged herein.

144.     Defendants Sanchez and Lunsted's conduct alleged herein amounts to oppression, fraud or malice within the meaning of Civil Code section 3294 et seq., and punitive damages should be assessed against each such defendant for the

purpose of punishment and for the sake of example.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, jointly and severally, as follows:

      a.  For economic damages according to proof;

      b.  For non-economic damages according to proof;

      c.  Punitive damages against each of the individual defendants (Sniff, Gutierrez; Shouse, Wedel, Toan, Eneka, Salazar, McCollum, Sanchez, Lunsted and Does 1 to 100) according to proof;

      d.  Reasonable attorney fees and costs of suit pursuant to 42 U.S.C. 1988 and other relevant statutes where appropriate;

      e.  Prejudgment interest;

      f.  Costs of suit incurred herein and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

    Plaintiff respectfully demands that the present matter be set for a jury trial.

Dated:  June 14, 2017      \s\_____

                               Robert Trujillo, Esq.
                               Attorney for Plaintiff David Manzo by and through his Conservator, Genoveva Manzo

Dated: June 14, 2017          \s_____

Melody Trujillo, Esq.
Attorney for Plaintiff David Manzo by and through
his Conservator, Genoveva Manzo

Dated: June 14, 2017          \s_____

Suzanne Skolnick, Esq.
Attorney for Plaintiff David Manzo by and through
his Conservator, Genoveva Manzo

Dated: June 14, 2017          \s_____

Lewis Khashan, Esq.
Attorney for Plaintiff David Manzo by and through
his Conservator, Genoveva Manzo

PLAINTIFF'S COMPLAINT FOR DAMAGES, VIOLATIONS OF CIVIL RIGHTS   CASE No: 5:17-CV-1165